No. 24,734.

Tillie K. Wolford, as Administratrix of the Estate of John C. Wolford, Deceased, *Appellant*, v. The National Life Insurance Company, of the United States of America, *Appellee.*

#### SYLLABUS BY THE COURT.

1. Life Insurance — *Time for Payment of Annual Premiums Definitely Fixed in Policy Governs—Forfeiture of Policy for Nonpayment of Annual Premiums.* A policy of life insurance specifically provided for the annual payment of premiums after the first on the anniversaries of the date of the policy, with a grace period of one month, and that a failure to pay any premium when due should forfeit the rights of the insured and terminate the obligations of the insurance company under the policy. The policy was not delivered to the insured until 22 days after its date. *Held,* that the fact that the policy was not delivered on its date or a date corresponding with the times specifically fixed for the payments of subsequent premiums did not postpone the time for such payments to the anniversary of the date of delivery.

2. Same—*Notice of Intention to Cancel Policy for Nonpayment of Premiums Given 32 Days After Time Fixed for Payment of Premiums Valid.* Under the provisions of chapter 212, of the Laws 1913, which forbids the cancellation of life insurance policies without notice, it is *held* that such a notice given 32 days after the time fixed for payment of a premium of an intention to cancel the policy for nonpayment of a premium was a valid notice and that as payment was not made within 30 days after such notice, a forfeiture resulted.

3. Same—*Notice Deposited in Mail Sufficient.* Proof that a notice of cancellation was addressed to the insured and duly deposited in the mail is sufficient to show compliance with the statutory requirement.

Appeal from Lincoln district court; Dallas Grover, judge. Opinion filed October 6, 1923. Affirmed.

*E. A. McFarland,* of Lincoln, *R. A. Lovitt,* of Salina, and *James A. O'Donohoe,* of St. Louis, Mo., for the appellant.

*M. J. Healy, John J. McCurdy,* both of Lincoln, *James C. Jones,* and *James C. Jones, Jr.,* both of St. Louis, Mo., for the appellee; *Burton P. Sears,* of Chicago, Ill., of counsel.

*Robert Stone, George T. Mc Dermott, Robert L. Webb, and Beryl Johnson,* all of Topeka, as *amici curiæ.*

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by Tillie K. Wolford, as administratrix, against the National Life Insurance Company, upon a policy of insurance issued upon the life of John C. Wolford. The defendant prevailed and the plaintiff appeals.

Upon an application by John C. Wolford, a policy on his life for $5,000 was issued of the date of November 14, 1917, and the policy was delivered to him on December 6, 1917. Afterwards and on May 25, 1918, he applied to the defendant to exchange the policy which had been issued to him the previous year, viz., an ordinary life endowment at the age of 85 plan, to another kind of policy called the Golden Anniversary form, which provided for a payment of 20 premiums, the policy to mature as an endowment at the age of 85 and the payment of a higher premium rate. The application was accepted, the first policy issued was surrendered and canceled, and the new policy issued and delivered, which is the one upon which the present action is brought. The parties agreed and the application recited that the insurance was to date from November 14, 1917, the date of the first policy issued, and it was expressly stated that the insurance was granted in consideration of an advance payment of $227.70, one year's insurance, terminating on November 14, 1918, and of the payment of annual renewals of $227.70 on or before the 14th of each November thereafter. The policy provided that the failure to make any payment when due should forfeit and cancel the contract of insurance and terminate the obligations of the company under the policy. It further provided that a grace of not less than 30 days would be allowed on the payment of each premium after the first during which month the policy would continue in force, and if the insurer should die within that period, the unpaid premium for the current policy year would be deducted from the amount payable under the policy.

The first premium was paid but no payment was made on November 14, 1918, nor was any payment made before the death of the in-

Wolford, *Administratrix*, v. Insurance Co.

sured which occured on August 25, 1919. On December 16, 1918, more than a month after the grace period, a notice was sent to the insured by the company that as the premium on the policy had not been paid, it was its intention to forfeit and cancel the policy unless the premium was paid within 30 days from the date of the notice. This notice was given as was stated therein in compliance with the provisions of chapter 212 of the Laws of 1913, relating to the forfeiture of life insurance policies.

There is no dispute as to the controlling facts. As we have seen the terms of the policy provided that November 14, 1917, was fixed by the parties as the time from which the insurance was to date, and November 14 of each year thereafter the time when it would terminate. It was not then paid nor had payment been made for more than nine months thereafter when the insured died. The contention of plaintiff is that the policy not being delivered until December 6, 1917, the insurance was not in force until that time and there being 30 days of grace given, within which to pay premiums, the insured was not in default until January 6, 1919, and the notice of intention to forfeit given on December 16, 1918, was premature and therefore a nullity.

It has been determined that the statute mentioned to the effect that a cancellation notice given before the time in which payment may rightfully be made is not a valid statutory notice, and that forfeiture or termination of liability on the policy does not result from it. (*Priest v. Life Association*, 99 Kan. 295, 161 Pac. 631; *Reynolds v. Insurance Co.*, 105 Kan. 669, 185 Pac. 1051; *Cunningham v. Insurance Co.*, 106 Kan. 631, 189 Pac. 158.)

The insurance company contends that the second premium became due at the time expressly fixed by the parties in the policy, to wit, November 14, 1918, and allowing the stipulated 30 days of grace a default occurred on December 14, 1918, and that the notice mailed to the insured on December 16, 1918, was a compliance with the statute which effectually terminated its liability under the policy. It was competent for the parties to agree upon the date for the payment of premiums and the time when the insurance would terminate. It was definitely stipulated in the contract that the date was November 14, 1918, with the added grace period. The insured was not in default until the end of that period, but when the period expired there was a default which would have automatically caused a forfeiture, but for the statute relating to cancellation. It

provides for notice of an intention to forfeit the policy for nonpayment of a premium, after which the policy holder has a right to pay the premium at any time within 30 days from the mailing of the notice. The turning point in the case is whether the notice given, which was otherwise sufficient, was prematurely given. If the date of the delivery of the original policy is the contract time for payment of premiums the result would be that the notice was given before the time for payment of the premiums had expired and cause for forfeiture arose. That interpretation, however, would conflict with the plain terms of the insurance contract and would in effect be a modification by the court of the contract the parties chose to make. The time for the payment of premiums and when the insurance would terminate was definitely stated and coupled with it was a provision that a failure to pay any premium when due should operate as a forfeiture and terminate the obligations of the company. There is no ambiguity in the contract in respect to the time of payment which opens the way for interpretation by the court and permits it to say that one of several dates mentioned was the time for which insurance was to run and measure the date of expiration. Decisions upon contracts of that character are cited, wherein the provisions were liberally interpreted in favor of the insured and among them are *Halsey v. Insurance Co.*, 258 Mo. 659; *Stramback v. Fidelity Mutual Life Ins. Co.*, 94 Minn. 281; *Prudential Ins. Co. of America v. Stewart*, 237 Fed. 70; *McMaster v. New York Life Ins. Co.*, 183 U. S. 25. But these are mainly cases where there were ambiguous provisions in the contract and where the times of payment were not definitely prescribed. Here, the times of payment were unequivocally fixed in the contract. The parties were entitled to make their own contracts and the courts cannot interpret into the contracts conditions contrary to those which the parties have clearly expressed in writing. There is nothing in the contract suggesting that December 6, 1917, the time of the delivery of the first policy, was the premium payment time, or that the parties had another date in mind for payment than the one specifically stated in the contract. The time when payments became due was very important to both parties, as insurance companies can only survive by the prompt payment of premiums and in order that they may give the insured proper notices of defaults, and equally important to the insured in order that he may avoid a default and prevent the cancellation of his policy. In *McCampbell v. New York Life Ins. Co.*, 288

Wolford, *Administratrix,* v. Insurance Co.

Fed. 465, an action on a policy was contested for the nonpayment of a premium. The application for insurance made on January 31, 1901, was approved and the policy issued and dated February 27, 1901. It provided for the payment of premiums on January 31 of each year, and it also stipulated that the company should incur no liability under the contract until the first premium was paid, and while the insured was in good health. The policy was not delivered nor the first premium paid until March 1, 1901. There was a default in the payment of the premium due January 31, 1918, and on March 29 the insured remitted the amount of the default payment with an application for reinstatement, but the policy was not reinstated because a satisfactory health certificate was not presented. After the death of the insured an action was brought on the policy claiming that the remittance for reinstatement was really a payment of the premium on March 29, and kept the insurance in force. The theory was that as the policy was not delivered until March 1, 1901, each subsequent premium did not become due until that date of the following years and there being one month of grace the payment on March 29 prevented a default. The court said:

"It is argued that this necessarily follows from the provision in the application that it is a condition precedent to the company's liability that the policy should be issued and the first premium paid during the lifetime and good health of the applicant, and that to require the first premium to cover a period prior to the beginning of such liability would be to require an insured to pay for insurance which he did not obtain. A conclusive answer is that parties are entitled to make their own contracts. It is true that, if the insured in this case had died before March 1, 1901, liability under the policy would not have attached. But the insured, by agreeing that January 31 should be the anniversary of the policy, and that premiums should be paid on that day, or by February 28 of each year, during the life of the policy, secured insurance as of the age 39, instead of 40, and thereby was required to pay $16.50 per annum less than he would have been required to pay if the policy had been issued to him after February 13, 1901. January 31 of each year was recognized by both the insured and the insurer as the date upon which premiums were required to be paid. If the contention of the plaintiff should prevail, it would cause untold confusion. . . The time when a premium is due should be definite, and that cannot be if the date upon which the first premium was in fact paid should fix the dates upon which subsequent premiums should be paid. Therefore the date mentioned in the policy for the payment of premiums, governs. The date when the first premium was paid, which is almost always uncertain, and in most instances impossible of ascertainment, is immaterial." (p, 469.)

In *Kansas City Life Ins. Co. v. Harper* (Okla.), 214 Pac. 924,

928, the policy involved was issued on June 28, 1912, and provided for payments of premiums annually on the 28th of June during the life of the policy. It contained a provision that it should not take effect until its delivery to the insured during his lifetime and good health. The policy was delivered on July 25, 1912. One of the subsequent payments was not made at the stipulated time and shortly afterwards he died. It was contended that because the policy was not delivered until July 25, the subsequent payments did not become due until that date of the succeeding years. The court ruled to the contrary, saying:

"In order to bridge over this period of time, counsel for defendant in error's first contention is that the policy did not take effect and become operative until July 25, 1912, the date of the delivery of the same, and that each premium became due each 12 months thereafter, with 30 days' grace; and not on June 28th, the date of the policy and on which date the annual premium became due, by the terms of the policy. With this contention we cannot agree, because, as hereinbefore stated, the policy by its terms provided otherwise. And the authorities do not support counsel's contention." (p. 928.)

In *Jewett v. Life Insurance Co.,* 149 Mich. 79, the application for the policy was made on August 11, 1902, and the policy issued and delivered to the insured on August 18, 1902. It provided that quarterly premiums should be paid on the first days of August, November, February and May of each year. The premium due November 1, 1903, was not paid and the insured died November 17, 1903. It was contended that as the policy was not delivered until August 18, 1902, the payments were thereby postponed 18 days. In meeting this contention the court said:

"The terms of the policy are so clear and explicit that 'he who runs may read' it and understand it. It provided for the payment of $100 to cover the first annual premiums for one year, running from the 1st day of August to the 1st of August following. It provided that the premiums thereafter should be paid in quarterly installments of $25 each on or before the 1st day of certain months, and that failure to pay as provided should result in the forfeiture of the policy. There is always a time between the application for a policy and its issuance by the company, where it is expressly so provided, that liability does not attach. That fact, however, does not operate to change the times and terms of payment expressly provided in the policy itself. The contention of the learned counsel is that, inasmuch as the policy in question was not in force until the 18th day of August, therefore the payments of the quarterly premiums were postponed 18 days. It would follow also that, had Mr. Jewett lived 10 years, the policy would not have become due until the 18th day of August, 1912, instead of August 1st, as expressly provided in the contract. To so hold would not be the interpretation of ambiguous language, but would result in a court-made contract." (p. 82.)

Other cases of like import are: *McConnell v. Provident Savings Life Assur. Soc.*, 92 Fed. 769; *Johnson v. Mutual Benefit Life Ins. Co.*, 143 Fed. 950; *Methvin v. Fidelity Mut. Life Assn.*, 129 Cal. 251; *Mutual Life Ins. Co. v. Stegall*, 1 Ga. App. 611; *Tibbitts v. Mutual, etc., Ins. Co.*, 159 Ind. 671; *Painter v. Mass. Mut. Life Ins. Co.* (Ind. App.), 133 N. E. 20; *Wilkinson v. Commonwealth Life Ins. Co.*, 176 Ky. 833; *Wilkie v. Insurance Co.*, 146 N. C. 513; *Sydnor v. Met. Life Ins. Co.*, 26 Pa. Sup. Ct. 521; *Rolerson v. Standard Life Ins. Co.* (Tex. Civ. App.), 244 S. W. 845.

Here, the insured in his application requested that the insurance should date from November 14, 1917. That was the date fixed in the policy and we cannot hold with the plaintiff without writing a new contract and one which would be in conflict with that explicitly made by the parties. November 14 of each year was agreed upon as the time of payment and when the added grace of one month had expired the insurance lapsed. The fact that delivery of the policy was not made until 22 days after the date fixed in the policy did not operate to change the time when the subsequent premiums became payable. The general rule has been stated "Premiums are payable on the dates fixed by the contract, and the fact that the policy does not go into effect on a date corresponding to the date fixed for payment of subsequent premiums does not change the provisions of the contract as to when such subsequent premiums become payable." (25 Cyc. 751.) The company then under the statute was warranted in giving the notice of forfeiture which it mailed to the insured on December 16, 1918. That notice was given in strict compliance with the statute, and must be held to be valid and the premium not being paid within 30 days thereafter, a forfeiture legally resulted.

After the evidence of both parties had been introduced the court directed a verdict for defendant and it is contended that the fact of giving a forfeiture notice should have been submitted to the jury. There was no dispute in the evidence as to that fact. All of the evidence on the subject was that a proper notice of cancellation was prepared, addressed to the insured and was duly deposited in the mail on December 16, 1918, as the statute provides. No more is required to effect a forfeiture. There was nothing in the evidence upon which an inference might be predicated that the notice had not been mailed and received and therefore nothing was left for submission to the jury.

Judgment affirmed.